UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ADAM ZACHS,<br>    *Plaintiff*,<br><br>v.<br><br>WARDEN BARONE, DISTRICT<br>ADMINISTRATOR RODRIGUEZ,<br>REVERAND DR. CHARLES<br>WILLIAMS, AND KITCHEN<br>SUPERVISOR STEPANIAN,<br>    *Defendants*. | CASE NO. 3:24-cv-171 (KAD)<br><br><br><br><br>MAY 21, 2024 |

## INITIAL REVIEW ORDER

Kari A. Dooley, United States District Judge:

Plaintiff Adam Zachs ("Zachs"), currently confined at Cheshire Correctional Institution ("Chesire"), filed this civil rights complaint *pro se* pursuant to 42 U.S.C. § 1983 against four defendants: Warden Barone, District Administrator Rodriguez, Reverend Dr. Charles Williams, and Kitchen Supervisor Stepanian. He seeks damages and declaratory relief for violations of his religious rights under the First and Eighth Amendment of the U.S. Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

**Standard of Review**

Under § 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed

allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

Zachs is a member of the "CHABAD-LUBAVITCH chasidic community" and, since his extradition to and incarceration in the United States in 2011, has continued to practice the Jewish religion. *Id.* at 3 ¶¶ 8–10. Zachs was incarcerated at MacDougall-Walker Correctional Institution ("MacDougall") for nearly ten years before he was transferred to Cheshire. *Id.* at ¶ 11.

In 2015, Zachs was assigned as a janitor in the kitchen workers' housing unit. *Id.* at 4 ¶ 13. After speaking with the kitchen workers, Zachs became concerned about the way religious meals were prepared. *Id.* Specifically, Zachs learned that hard-boiled eggs were prepared on the premises by non-Jewish workers and, sometimes, on the Sabbath; pots and utensils used to prepare Jewish meals were not made kosher and were washed and stored with non-kosher pots and utensils; and baked potatoes were not double wrapped in foil before cooking, were cooked in the common-fare oven which had not been made kosher during the Passover holiday, and were not immediately placed on the Jewish inmates' food trays. *Id.* at 4 ¶ 15.

Zachs brought his concerns to Rabbi Eli Ostrozynski and Reverend Dr. Williams, who informed him that the Passover meals were being prepared in accordance with Jewish law and were "kosher and fit for consumption." *Id.* at 5 ¶ 16. However, when Zachs spoke to the kitchen workers each year at Passover, they told Zachs that they had not been instructed to do anything differently. *Id.* at ¶ 17.

In 2021, Zachs asked religious officials in advance of the Passover holiday to investigate the food preparation procedures. *Id.* at ¶ 18.[1] He was referred to Rabbi Ostrozynski and Reverend Dr. Williams but did not receive a written response from either. *Id.* at 6 ¶¶ 19–20. Both officials assured him, however, that the Passover meals would be kosher and made in accordance with Jewish law. *Id.* at ¶ 21.

Prior to March 27, 2021, the start of the Passover holiday, Rabbi Ostrozynski instructed Defendant Stepanian about the procedures she should follow in preparing the Passover meals. *Id.* at 7 ¶ 22. However, she instructed the kitchen workers to ignore the Rabbi's directions regarding the preparation of the potatoes and the kitchen workers followed her instruction. *Id.*

Potatoes that were not prepared in accordance with the Rabbi's instructions were served at each lunch and dinner from March 27, 2021, to March 31, 2021. *Id.* at ¶ 23. Believing they had been prepared properly, Zachs ate the potatoes at each meal. *Id.*

Sometime after lunch on March 31, 2021, Rabbi Ostrozynski informed Zachs that the potatoes had not been prepared in a kosher manner and advised Zachs to stop eating them. *Id.* at 7–8 ¶ 24. Zachs and another Jewish inmate refused the evening meal on March 31, 2021. *Id.* at 8 ¶ 25. Because Rabbi Ostrozynski had left for the day, several correctional officers came to the housing unit to speak with Zachs and the other inmate to remedy the situation. *Id.* They offered the inmates another food tray that had been properly prepared. *Id.* Zachs ate the newly prepared meal but refused to eat the potatoes. *Id.*

Later that evening, Zachs learned from the kitchen workers that Defendant Stepanian had instructed the workers not to double wrap the potatoes. *Id.* at ¶ 26. When Zachs reported his findings to Rabbi Ostrozynski and the kitchen supervisors the following day, they assured him that

---

[1] Zachs refers to several exhibits in his statement of facts but did not submit any exhibits with his Complaint.

3

the meals would be properly prepared in the future. *Id.* at 9 ¶ 27. Defendant Stepanian was not disciplined. *Id.* at ¶ 28.

On April 18, 2021, Zachs filed a grievance. *Id.* at ¶ 29. About a month later, he was transferred to Cheshire. *Id.* at ¶ 30. The grievance was denied on the ground that Zachs had not requested a remedy that could be granted. *Id.* at 9–10 ¶ 31. Zachs' grievance appeal also was denied. *Id.* at 10 ¶¶ 33–34.

**Discussion**

Zachs asserts six claims: (1) Defendant Stepanian was deliberately indifferent to his religious rights, (2) Defendant Williams was deliberately indifferent to Zachs' religious rights by failing to investigate Zachs' concerns that meals were not being prepared in accordance with Jewish law, (3) Defendants Barone and Rodriguez were deliberately indifferent to Zachs' religious rights by failing to investigate the allegations or discipline Defendant Stepanian after being made aware of the issue through Zachs' grievances, (4) Defendant Stepanian violated Zach's rights under RLUIPA, (5) Reverend Dr. Williams was negligent in failing to investigate Zachs' claims, and (6) Defendants Barone and Rodriguez were negligent in failing to discipline Defendant Stepanian.

*Eighth Amendment*

Although Zachs states that he brings claims for violation of his rights under the Eighth Amendment and couches his claims in terms of deliberate indifference, his claims actually are First Amendment claims for a violation of his right to freely exercise his religion. Any Eighth Amendment claims are dismissed.

*First Amendment*

"The religion clauses of the First Amendment, applicable to the states through the

4

Fourteenth Amendment, provide that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'" *Kravitz v. Purcell*, 87 F.4th 111, 119 (2d Cir. 2023). In the prison context, violations of the right to free religious exercise are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). A prisoner's First Amendment right to freely exercise his religious beliefs may only be infringed to the extent that such infringement is reasonably related to legitimate penological interests. *Id.*; *see also Turner v. Safley*, 482 U.S. 78, 89 (1987). "In short, to assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in nature in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers legitimate penological objectives." *Id.* at 128 (cleaned up).

The Free Exercise Clause includes a prisoner's right to meals that comport with religious requirements. *Washington v. McKoy*, 816 F. Appx. 570, 573 (2d Cir. 2020) (citing *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003)); *see also McEachin v. McGinnis*, 357 F.3d 197, 203–04 (2d Cir. 2004) (holding First Amendment Free Exercise Clause protects an inmate's right to a diet or food that is consistent with dictates of inmate's faith or religious beliefs"). "However, '[i]t is well settled that the periodic or temporary denial of religious meals does not constitute "substantial" interference with free exercise and is insufficient to establish a First Amendment claim.'" *Culpepper v. Doe #1*, No. 21-cv-6552 (JS)(LGD), 2023 WL 6460803, at *3 (E.D.N.Y. Oct. 4, 2023) (quoting *Lewis v. Zon*, 920 F. Supp. 2d 379, 385–86 (W.D.N.Y. 2013) (dismissing free exercise and RLUIPA claims where inmate alleged he did not receive kosher meals on

5

occasion while being transferred between facilities).

Zachs alleges that properly prepared kosher food is a religious requirement and that he was denied properly prepared potatoes at lunch and dinner during five days of the Passover holiday in 2021.[2] The Court assumes, for purposes of initial review, that Zachs has stated a plausible First Amendment claim. Thus, the First Amendment claim will proceed against Defendants Stepanian and Williams.

*RLUIPA*

RLUIPA "prohibits state and local governments from taking actions that substantially burden the religious exercise of any person unless the government shows that the action constitutes the least restrictive means of furthering a compelling government interest." *Culpepper*, 2023 WL 6460803, at *3 (citing 42 U.S.C. § 2000cc-1(a)(1)-(2); *Holt v. Hobbs*, 574 U.S. 352, 356–57 (2015)).

To pursue a RLUIPA claim, the plaintiff must show that the state has imposed a substantial burden on his ability to exercise his religion. The burden then shifts to the defendants to show that the challenged action both furthers a compelling government interest and is the least restrictive means of doing so. *Id*. (quoting *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010)). Under RLUIPA, however, the plaintiff does not have a private right of action against a state official in his or her individual capacity. In addition, RLUIPA does not authorize the recovery of damages against state officials in either their individual or official capacities. *See Holland v.*

---

[2] Zachs includes allegations that the Passover meals were not properly prepared in prior years. However, the limitations period for filing a § 1983 action is three years. *See Thompson v. Rovella*, 734 F. Appx. 787, 788–89 (2d Cir. 2018) (statute of limitations for filing a § 1983 action in federal court in Connecticut is three years). Zachs filed his complaint on February 8, 2024. Thus, any claims relating to Passover meals prior to 2021 are time-barred. The Court considers the Complaint to assert claims involving only the 2021 Passover meals.

*Goord*, 758 F.3d 215, 224 (2d Cir. 2014). As Zachs seeks only damages and declaratory relief, which as discussed below, is unavailable, his RLUIPA claim is dismissed.

*Defendants Barone and Rodriguez*

Zachs also asserts First Amendment claims against Warden Barone and District Administrator Rodriguez, arguing that they became aware of his concerns when he filed his grievances. Zachs faults them for failing to investigate his claims and failing to discipline Defendant Stepanian. Zachs did not file his grievances until after the Passover holiday concluded. By that time, Rabbi Ostrozynski already had investigated and determined that Defendant Stepanian had not followed Jewish law in preparing the Passover meals.

Warden Barone and District Administrator Rodriguez are high-ranking supervisory prison officials. A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of the defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). This is true with respect to supervisory officials, as well. *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

Defendants Barone and Rodriguez were not made aware of the issues with the Passover meals until after the Passover holiday concluded. Thus, they were not personally involved in the alleged First Amendment violation.

Zachs' Fourteenth Amendment claim regarding grievance processing also fails. An inmate has no constitutional right to an administrative remedy or grievance program, to have his grievance properly processed or investigated, or to receive a response to a grievance he has filed.

*See Crispin v. Sussel*, No. 3:21-cv-885 (KAD), 2023 WL 22421, at *5 (D. Conn. Jan. 3, 2023). The Second Circuit has stated that due process claims relating to prison grievance procedures "confuse[] a state-created procedural entitlement with a constitutional right" and that "neither state policies not 'state statutes . . . create federally protected due process entitlements to specific state-mandated procedures.'" *Riddick v. Semple*, 731 F. Appx. 11, 13 (2d Cir. 2018) (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)). Further, an inmate has no right to have correctional employees disciplined. *See S. v. D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Leeke v. Timmerman*, 454 U.S. 83, 86–87 (1981) (finding inmates had no constitutional claim based on magistrate's refusal to charge guards with assault).

The federal claims against Defendants Barone and Rodriguez are therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1). The Court has discretion to retain or decline supplemental jurisdiction over a state law claim asserted against a defendant who has no federal claims pending against him. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (noting that the court can exercise supplemental jurisdiction over a state law claim even if "asserted against a party different from the one named in the federal claim" but "[t]he fact that the district court has the power to hear these supplemental claims does not mean, of course, that it must do so. Instead, it may decline to exercise its power based on the facts laid out in 28 U.S.C. § 13676(c)"); *Kaplan v. County of Orange*, 528 F. Supp. 3d 141, 160–61 & n.6 (S.D.N.Y. 2021) (declining to exercise jurisdiction over state law claims against certain defendants against whom no federal claims were pending; discussing discretion to do so; and citing cases). Because the federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over the state law negligence claim against Defendants Barone and Rodriguez.

*Official Capacity Damages Claims*

Zachs seeks damages from the defendants but does not specify whether he seeks damages against them in their individual or official capacities. Because all defendants are state employees, the Eleventh Amendment bars the recovery of damages against them in their official capacities. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). All claims for damages against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

*Declaratory Relief*

Zachs seeks declaratory relief in the form of statements that the defendants' actions violated his First Amendment rights. Declaratory relief serves to "settle legal rights and remove uncertainty from legal relationships without awaiting a violation of the rights or a disturbance of the relationship." *Colabella v. American Inst. of Certified Pub. Accountants*, No. 10-cv-229 (KAM)(ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 22, 2011) (citation omitted). As such, "[d]eclaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages." *Orr v. Waterbury Police Dep't*, No. 3:17-cv-788 (VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018). In *Orr*, the court dismissed a request for declaratory judgment that the defendants had violated the plaintiff's Fourth Amendment rights during his arrest because the request "concern[ed] past actions." *Id.* Because Zachs' request for declaratory relief concerns a past incident, any request for declaratory relief is not cognizable and is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Orders**

All federal claims against Defendants Barone and Rodriguez, any Eighth Amendment claims, the RLUIPA claim, all claims for damages against the defendants in their official capacities, and the request for declaratory relief are **DISMISSED** pursuant to 28 U.S.C. §

1915A(b). The Court declines to exercise supplemental jurisdiction over the state law claim against defendants Barone and Rodriguez.

The case will proceed on the First Amendment claims against Defendants Williams and Stepanian and the state law negligence claim against Defendant Williams in their individual capacities.

The Court enters the following additional orders.

(1) **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain current service addresses for Defendants Williams and Stepanian, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided by June 11, 2024, and report to the Court on the status of the waiver request on the thirty-fifth day after mailing. If either defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the cost of such service.

(2) The Clerk shall send Plaintiff a copy of this Order.

(3) Defendants shall file their response, either an answer or motion to dismiss, within sixty (60) days from the date the waiver form is sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited in the Initial Review Order. They also may include all additional defenses permitted by the Federal Rules of Civil Procedure.

(4) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by December 17, 2024. Discovery requests need not be filed with the court.

(5) All motions for summary judgment shall be filed by January 16, 2025.

(6) Pursuant to Local Rule 7(a), a nonmoving party must respond to a dispositive

motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or if the response is not timely filed, the dispositive motion can be granted absent objection.

(7) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. **Failure to do so can result in the dismissal of the case**. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should include all the case numbers in the notice of change of address. Plaintiff should also notify Defendants or the attorney for Defendants of his new address.

(8) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the Court, discovery requests must be served on defendant's counsel by regular mail. In addition, Plaintiff must serve copies of all documents by regular mail on any defendant who does not participate in electronic filing.

(9) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Plaintiff.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of May 2024.

                                                */s/ Kari A. Dooley*
                                                KARI A. DOOLEY
                                                UNITED STATES DISTRICT JUDGE